Zora R. Brannock, Appellee, v. City of Chicago, Appellant.

Gen. No. 45,842.

Opinion filed December 8, 1952. Rehearing denied December 22, 1952. Released for publication December 23, 1952.

JOHN J. MORTIMER, Corporation Counsel, City of Chicago, for appellant; L. LOUIS KARTON, Head of Appeals and Review Division, and JOSEPH F. Fox, Assistant Corporation Counsel, both of Chicago, of counsel.

ZEDRICK T. BRADEN, and LYMUS WALLACE, both of Chicago, for appellee; SIDNEY A. JONES, JR., GLENN C. FOWLKES, and GEORGE N. LEIGHTON, all of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Zora R. Brannock filed a complaint in the circuit court of Cook county against the City of Chicago to recover damages of $10,000 for personal injuries alleged to have been inflicted by a "mob" as defined in Section 1 of "An Act to suppress mob violence," (par. 512, ch. 38, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 1951, 37.481]). Issue was joined. A trial resulted in a verdict against defendant for $1,000. Motions by defendant for judgment notwithstanding the verdict and for a new trial were overruled and judgment was entered, to reverse which defendant prosecutes this appeal.

The complaint alleged that on August 16, 1947, plaintiff was traveling in an automobile in a northerly direction on Ashland Avenue at or near its intersection with Chelsea Street in Chicago; and that a riotous mob, crowd and assemblage of five or more persons congregated for the purpose of exercising correctional powers over her, threw stones and struck the automobile in which she was riding, damaging the automobile and injuring her. Plaintiff lived at 11412 South Ada Street, Chicago, which is east and south of 111th Street and Ashland Avenue. Chelsea is a short street

which runs northwesterly from the west side of Ashland Avenue, about half a block north of 111th Street. On Saturday evening, August 16, 1947, she was riding in the family automobile being driven by her daughter Jean. Plaintiff testified that "we were going to meet my husband at 81st and Halsted." The car was driven by Jean north on Throop Street to 111th Street, west on 111th Street to Ashland Avenue, where it turned in a northerly direction. Plaintiff said that "just as we turned off 111th Street on to Ashland Avenue there was a man, a white man, who almost stopped our car"; that "he stopped our car and looked at my daughter who was driving and then we drove on and just at the intersection of Chelsea and Ashland Avenue, just before we got there there was a whistle and then it looked like between thirty and forty men around our car and stopped our car"; and that "they asked us what we were doing out, and then they said, 'Get them.'" In answer to the question, "What did you say to them?" witness answered: "We told them we were on our way to meet my husband at 81st and Halsted." In answer to the question, "And then what did they say?" witness answered: "They said, 'Get them.'"

Answering the question, "And then what happened?" plaintiff said: "And then they began throwing huge pieces of concrete through the windows of the car, and they struck me." She said that all the windows, except those that were lowered, were broken and that she was struck by pieces of stone and concrete. She testified as to serious injuries suffered. It is unnecessary to detail the injuries as the City does not contend that the judgment is excessive. Reverend Richard C. Keller, a clergyman, testified that at about 11:00 p. m. on August 16, 1947, he was at 111th Street "where Vincennes almost intersects with Chelsea"; that a car had been overturned and another

486

car had been smashed with stones "by a group of men"; that he "saw some of them and would estimate about eight or nine altogether"; that plaintiff was in the car that had been stopped and the windows smashed; that he learned that it was she after he returned from the Morgan Park Police Station where he had gone "to get police protection against this invading horde of men"; that at the police station he told Lieutenant Smith about "the latest incident that had developed on the boundary line in a series of incidents"; that the lieutenant told him that all of his men were out from the station "and he could not send a group of men"; that the lieutenant advised witness to "make contact with Commissioner Prendergast," which witness did; and that witness contacted Commissioner Prendergast on the telephone.

Jean L. Brannock, plaintiff's daughter, testified that she was driving the car; that she and her mother were on their way "to pick up" Mr. Brannock; that at the corner of Chelsea and 111th Streets "as we got ready to turn a young man was standing there and he whistled as we turned the corner, and before we had gone any length at all we were stopped by a surging crowd of people, mostly men, and I was forced to stop because so many people were in the area and they asked what we were doing there, and some of us said that we were going after my father, and they said, 'Let's get them' "; that they began to throw stones and rocks and bricks and concrete, a little bit of everything into the car, and "I was badly upset at the time and I jumped out of the car"; that "after I got out of the car I had an iron bar in my hand in the meantime and the crowd sort of dispersed and just about that time my mother screamed and I turned around and she was covered with blood and the whole car was covered with blood, and I ran. There were people around. I guess they came from somewhere

487

and well, they asked me what happened, what was the trouble, and I told them my mother was badly hurt''; and that ''I was pretty hysterical at the time and I was screaming and then somehow we got back to the car. That isn't very clear in my mind because I was pretty badly cut up myself, and we got back to the car and somebody instructed me that I had better go to the doctor.'' Witness testified further that she then drove her mother to a friend's house, a doctor was called and she received medical attention. On cross-examination, Miss Brannock testified that she was not aware that her mother was hurt until she screamed, at which time witness was out of the automobile; that witness glanced back and saw her mother ''covered with blood''; that witness guessed she ''reacted like anybody would when I saw the blood''; that she ran toward 111th Street; that she was ''running and screaming and some people ran toward me from 111th Street and they inquired about the reason I was screaming and I screamed about my mother and what not, and they led me back to the car''; and that witness then drove the car with her mother as a passenger to a neighbor's house.

From the recital of the testimony pertaining to the occurrence we cannot draw any inference as to the purpose of the collection of individuals who were assembled and who damaged plaintiff's automobile and inflicted injuries on her. Plaintiff and her daughter were on their way to 81st and Halsted Streets for the purpose of ''picking up'' Mr. Brannock. From the testimony of Reverend Keller it appears that another car had been overturned in the vicinity; that he had gone to get police protection against ''this invading horde of men''; that he told Lieutenant Smith of the Morgan Park Police Station ''about this incident which developed on the boundary line in a series of incidents''; that the lieutenant told him ''he could not

488

send any men'' as none were in the station; and that he advised that Commissioner Prendergast be contacted, which was done. There is nothing in the record to indicate the intention of ''the invading horde of men'' or what was meant by the ''series of incidents.'' There is nothing in the record to establish the allegation of the complaint that the assemblage of five or more persons congregated for the purpose of exercising correctional powers over the plaintiff. For this reason the court should have directed a verdict for the defendant. The judgment of the circuit court of Cook county is reversed and the cause is remanded with directions to enter judgment for the defendant and against plaintiff.

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J. and NIEMEYER, J., concur.